[S. F. No. 1853.   In Bank.—December 29, 1899.]

A. T. PATTON, Respondent, v. BOARD OF HEALTH OF CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

OFFICERS — EMPLOYEES — REMOVAL — CAUSE — PLEASURE OF APPOINTING POWER—CONSTITUTIONAL LAW.—Though the legislature has power to provide that mere appointees or employees of a public board, who are not officers, may not be removed without just cause, implying the right to notice and an opportunity to be heard before removal, it has no power to make such provision in relation to an officer whose tenure of office is during the pleasure of the authority making the appointment by the terms of section 16 of article XX of the state constitution.

ID.—NATURE OF OFFICE— FIXED COMPENSATION—PUBLIC DUTIES—CONTINUOUS EMPLOYMENT.—When the legislature creates a position, to which a fixed compensation or salary is attached, and the duties of which pertain to the public, and are to be exercised for the

public benefit, and the employment in which is continuous and not merely temporary, transient, or occasional, such position or employment is an office, and he who occupies it is an officer.

ID.—PRESCRIPTION OF OFFICIAL DUTIES BY PUBLIC BOARD.—The fact that the prescription of the duties of an office is not directly determined by the legislature, and that the legislature has delegated to a public board, directed to make the appointment, the power, as superior officers, to determine the duties of the officer appointed by them, does not render the position any the less an office.

ID.—HEALTH INSPECTOR AN OFFICER—TENURE OF OFFICE—PLEASURE OF BOARD OF HEALTH.—A health inspector required to be appointed by the board of health of the city and county of San Francisco, and whose duties are to be fixed by the board, under section 3009 of the Political Code, and whose salary is provided for in section 3010 of that code, is an officer within the meaning of section 16 of article XX of the state constitution. His tenure of office, not being otherwise fixed, is subject to the pleasure of the board of health, and is not subject to the statutory requirement of section 3009 against removal otherwise than for cause.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.    William R. Daingerfield, Judge.

The facts are stated in the opinion.

Garret W. McEnerney, and Sidney M. Ehrman, for Appellants.

A health inspector of the city and county of San Francisco is a public officer within the provisions of section 16 of article XX of the constitution: His salary is fixed by section 3010.    The provision in section 3009, in regard to removal for cause only, being in violation of the constitutional provision as to the pleasure of the appointing power, is unconstitutional and void. (*People v. Hill*, 7 Cal. 97; *Smith v. Brown*, 59 Cal. 672; *People v. Shear* (Cal., Sept. 24, 1887), 15 Pac. Rep. 92.)    A health inspector falls within the recognized definitions and authorities as to what constitutes a public office or officer.    (Bacon's Abridgment, tit. Office and Officers, A; Burrill's Law Dictionary, tit. Office; *Henley v. Mayor*, 5 Bing. 91; *United States v. Hartwell*, 6 Wall. 385, 393; *United States v. Maurice*, 2 Brock. 96, 103; *Shelby v. Alcorn*, 36 Miss. 273; 72 Am. Dec. 169; *Bradford*

*v. Justices,* 33 Ga. 332; *Bunn v. People,* 45 Ill. 397; *Attorney General v. Drohan,* 169 Mass. 534; 61 Am. St. Rep. 301; *Brown v. Russell,* 166 Mass. 14; 55 Am. St. Rep. 357; *People ex rel. Armsted v. Nostrand,* 46 N. Y. 381; *People ex rel. Kelley v. Common Council,* 77 N. Y. 503; 33 Am. Rep. 659; *Opinion of Judges,* 3 Me. 481; *Rowland v. Mayor,* 83 N. Y. 376; *Moser v. Mayor,* 21 Hun, 163; *In re Hardy,* 17 Misc. Rep. 667; 41 N. Y. Supp. 469; *Ricketts v. New York,* 67 How. Pr. 320; *Vaughn v. English,* 8 Cal. 40.)

James P. Langhorne, W. F. Fitzgerald, and A. T. Patton, *in pro. per.,* for Respondent.

The only person designated as an officer in the clause of section 3009 providing for health inspectors is the "quarantine officer." In other clauses certain "officers" are mentioned, and also "other employees." The nature of the functions of an employee determine the official or unofficial character of his employment. (*State v. Kennon,* 7 Ohio St. 557.) The health inspector is a mere agent, servant, or messenger of the board of health, and is not an officer. (*Smith v. Mayor,* 67 Barb. 223; *Olmstead v. Mayor,* 42 N. Y. Sup. Ct. 482; *People v. Pinckney,* 32 N. Y. 377; *Bunn v. People,* 45 Ill. 397.) Treating the "position" of health inspector as analogous to an office, still he could only be removed for "cause" after hearing. (*State ex rel. Lewis v. Board of Public Works,* 51 N. J. L. 240; *Kennedy v. Board of Education,* 82 Cal. 483; *Marion v. Board of Education,* 97 Cal. 608; *State ex rel. Denison v. St. Louis,* 90 Mo. 22; *State ex rel. Daily v. Essex County Freeholders,* 58 N. J. L. 319; *State ex rel. Reid v. Walbridge,* 119 Mo. 383; 41 Am. St. Rep. 663; *Haight v. Love,* 39 N. J. L. 22; *Dullam v. Willson,* 53 Mich. 392; 51 Am. Rep. 128; *Hallgren v. Campbell,* 82 Mich. 260; 21 Am. St. Rep. 557; *State ex rel. Hastings v. Smith,* 35 Neb. 13; *Ham v. Boston Board Police,* 142 Mass. 95; *People v. Carver,* 5 Colo. App. 159; *People ex rel. Munday v. Fire Commrs.,* 72 N. Y. 448; Mechem on Public Offices and Officers, sec. 454.) Every presumption is to be indulged in favor of the constitutionality of the express provision against removal of health inspectors, except for cause, contained in the section providing for their appointment. (*Bourland v. Hildreth,* 26 Cal. 161; *People v. Fris-*

*bie,* 26 Cal. 135; *University v. Bernard,* 57 Cal. 612; *People v. Hayne,* 83 Cal. 111; 17 Am. St. Rep. 217.)

CHIPMAN, C.—Plaintiff brings this action against the board of health of the city and county of San Francisco for a writ of mandate requiring it to admit plaintiff to the position of health inspector and to approve certain of his demands on the treasury for salary accruing since his removal.

The court found as facts that the board of health appointed plaintiff on August 6, 1895, as one of the six health inspectors provided to be appointed by section 3009 of the Political Code; that the board of health, in its order appointing plaintiff, did not specify or in any manner limit the term for which plaintiff should hold or exercise the position; that plaintiff entered upon the discharge of his duties pursuant to such appointment, and discharged the duties required of him by the board until about November 6, 1896, at which time, and while plaintiff was proceeding to perform his duties, the board passed a resolution purporting by its terms to remove plaintiff from his said position, "but the said resolution was so passed without plaintiff's knowledge or consent, and without any notice to him that any charge whatever had been made against him, or that any charge against him would be heard by said board, . . . . and plaintiff had no opportunity to be heard in his own behalf before said board of health or its members before the passage of said resolution." It is further found that solely upon the authority of said resolution plaintiff has been denied his right to be and act as such health inspector, and has been deprived of the emoluments pertaining to said position; that the duties of plaintiff as such inspector, prescribed by the board, were "to inspect premises concerning which complaints have been made to said board, and to report thereon to said board, and to serve notices issued by said board to persons to abate nuisances on their premises."

As conclusions of law, the court found that plaintiff has never been legally removed from the position of health inspector, and that he is still one of the six health inspectors appointed by the board of health August 6, 1895, and that "it is not material whether plaintiff was guilty of insolence, insubordination, or neglect, as he had no trial on such charge or charges"; that plaintiff is not an officer or commissioner within the meaning

of section 16, article XX, of the constitution of this state, and
that plaintiff is entitled to the writ, etc.   At the trial plaintiff
testified: "When I became a health inspector no written com-
mission was issued to me.   I took no oath of office, nor filed
any bond."   Plaintiff had judgment, from which and from the
order denying new trial defendant appeals.   Appellant relies
principally upon the following proposition: The plaintiff's term
of office as health inspector not having been fixed by the con-
stitution or by law, he held at the pleasure of the appointing
power; and that portion of section 3009 of the Political Code
prohibiting his removal without just cause is unconstitutional
and void, because in violation of section 16, article XX, of the
constitution.

This provision of the constitution reads as follows: "When
the term of any officer or commissioner is not provided for in
this constitution, the term may be declared by law; and, if not
so declared, such officer or commissioner shall hold his position
as such officer or commissioner during the pleasure of the au-
thority making the appointment; but in no case shall such term
exceed four years."   It is conceded that the term of the posi-
tion of health inspector is not prescribed either in the consti-
tution or by any law.   Section 3009 of the Political Code con-
tains the following, among other provisions: "The board of
health must appoint . . . . six health inspectors . . . . whose
duties must be fixed by the board of health. . . . . The appoint-
ing power aforesaid is vested solely in said board of health, and
said board shall have power to prescribe the duties of said ap-
pointees (referring to health inspectors and many other ap-
pointees), and shall not remove the same without just cause."
It cannot be doubted that the legislature may authorize the em-
ployment of persons to perform certain duties in their nature
public, to be prescribed by the authority making the appointment
of such persons, and may provide in the law that such persons
shall not be removed without just cause, if the employment is
not an office within the meaning of the constitution; and it is
well settled that under such a clause in the statute the ap-
pointee is entitled to notice and opportunity to be heard before
he can be legally removed. (*Kennedy v. Board of Education*,
82 Cal. 483; *Marion v. Board of Education*, 97 Cal. 608; *Fair-
child v. Board of Education*, 107 Cal. 92.)

With the policy of such a law we have nothing to do; its wisdom or unwisdom is for the legislature alone to determine.    We are only concerned, in the present case, with the question, Is the health inspector an officer within the meaning of the provision of the constitution above quoted?

Many of the cases and authors giving definitions of the word "office" and "officer" as used in statutes and constitutions will be found cited in chapter 1 of Mechem on Public Offices and Officers.    Counsel in their briefs have called attention to some others.    I do not think it possible from this mass of learning to deduce a definition universally applicable, although nearly every conceivable case has arisen and has been passed upon.    It seems to be agreed by all writers that certain things are requisite to make a given employment a public office and its incumbent a public officer.    Then there are numerous criteria which, while not in themselves conclusive, are yet held to indicate more or less strongly the legislative intent to create or not to create an office.    One of the requisites is that the office itself must be created by the constitution of the state or it must be authorized by some statute.    The section of the constitution in question embraces all classes of officers, statutory as well as constitutional.    (*People v. Perry,* 79 Cal. 105.)    But not all employments authorized by law are public offices in the sense of the constitution.    The presidency of a private corporation may be spoken of as an office; an executor, guardian, a referee for the decision and trial of an action, are all officers who derive their existence from statutes, but they are not public officers in the constitutional sense; "their authority is restricted to specific matters, and no general powers are conferred upon them authorizing them to act in respect of all cases, or in any case or matter other than specified and named in their appointment. They owe no duty to the public, and could perform no service for the public. . . . . 'Public office,' as used in the constitution, has respect to a permanent trust to be exercised in behalf of the government, or of all citizens who may need the intervention of a public functionary or officer, and in all matters within the range of the duties pertaining to the character of the trust. It means a right to exercise generally, and in all proper cases, the functions of a public trust or employment, and to receive

the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the tenure prescribed by law." (*In re Hathaway*, 71 N. Y. 238.)   Danforth, J., in *Rowland v. Mayor*, 83 N. Y. 376, said: "Whoever has a public charge or employment, or even a particular employment affecting the public, is said to hold or to be in office."   Platt, J., in *Matter of Oaths*, 20 Johns. 492, speaks of "office" as "an employment on behalf of the government in any station or public trust, not merely transient, occasional, or incidental."   Pearson, C. J., in *State v. Stanley*, 66 N. C. 59, 8 Am. Rep. 488, said: "A public office is an agency for the state, and the person whose duty it is to perform this agency is a public officer. . . . . The essence of it is the duty of performing an agency—that is, of doing some act or acts, or series of acts, for the state."   It has hence been held by most courts, as was said in the opinion of the judges, given to the governor, reported in appendix to 3 Me. 481: "The term 'office' implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the office, and the exercise of such power, within legal limits, constitutes the correct discharge of the duties of such office."   The opinion proceeds to further point out the distinction between an office and an employment under the government.   "The power thus delegated and possessed may be a portion belonging to some one of the three great departments, and sometimes to another; still it is a legal power, which may be rightfully exercised, and in its effects it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state.   An employment merely has none of these distinguishing features.   A public agent acts only on behalf of his principal, the public, whose sanction is generally considered as necessary to give the acts performed the authority and power of a public act or law.   And if the act be such as not to require such subsequent sanction, still it is only a species of service performed under the public authority and for the public good, but not in the execution of any standing laws, which are considered as the rules of action and the guardians of rights."   In *United States v. Maurice*, 2 Brock. 96, Chief Justice Marshall, in determining that the "agent of fortifications" is an officer of the United States, said: "An office

is defined to be 'a public charge or employment,' and he who performs the duties of the office is an officer. . . . . Although an office is 'an employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act or perform a service without becoming an officer. But if the duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to the station without any contract defining them, if those duties continue, though the person be changed—it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer. If it may be converted into a contract, it must be a contract to perform the duties of the office of agent of fortifications, and such an office must exist with ascertained duties, or there is no standard by which the extent of the condition can be measured." Judge Cooley distinguished the "officer" from the "employee" in the "greater importance, dignity, and independence of his position; in being required to take an official oath, and perhaps to give an official bond; in the liability to be called to account as a public offender for misfeasance or nonfeasance in office, and usually, though not necessarily, in the tenure of the position." (*Throop v. Langdon*, 40 Mich. 673.) But it has been held that an oath of office is not a necessary criterion; nor is salary. These are but incidents and form no part of the office, though they may aid in determining the nature of the position. Duration or continuance have been said to be embraced in the term "office" and Chief Justice Marshall, in the case cited, spoke of the duty being a continuing one as an important element. But Chief Justice Pearson, in the North Carolina case cited, said "that it made no difference whether there be but one act or a series of acts to be done—whether the office expires as soon as the one act is done, or is to be held for years or during good behavior" —the service being performed for the state. Our court at an early day, in *Vaughn v. English*, 8 Cal. 40, held that the clerks in the offices of secretary of state and controller and treasurer of state were officers within the meaning of the act of April 21, 1856. (Stats. 1856, p. 224.) It was there said: "The term

'officer,' in its common acceptation, is sufficiently comprehensive to include all persons in any public station or employment conferred by government." The definition given in 4 Jacob's Law Dictionary, 433, was quoted as follows: "It is said every man is a public officer who hath any duty concerning the public, and he is not the less a public officer where his authority is confined to narrow limits, because it is the duty of his office and the nature of that duty which makes him a public officer, and not the extent of his authority." The opinion continues: "The respondent was appointed by government; the duties which he is to perform concern the public, and he is paid out of the public treasury; he is, therefore, a public officer." It was held that because there was no definite term of the office could not be urged as an objection, for the clerks are appointed for the term of the officer making the appointment, subject to the power of removal.

It was held in *United States v. Germaine,* 99 U. S. 508, that civil surgeons appointed by the commissioner of pensions are not officers of the United States, because they are not appointed by a head of a department, nor are the appointments approved by such head, and this distinguished the case from *United States v. Hartwell,* 6 Wall. 385, where it was held that a clerk in the office of the assistant treasurer of the United States is an officer within the meaning of the act of Congress of June 14, 1866 (14 Stats. at Large, 65), punishing embezzlement. It was there said: "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties. The employment of defendant was in the public service of the United States. He was appointed pursuant to law, and his compensation was fixed by law. Vacating the office of his superior would not have affected the tenure of his place. His duties were continuing and permanent, not occasional or temporary."

In the case of *Bunn v. People* (1867), 45 Ill. 397, the cases were very fully examined and the conclusion reached that the commissioners appointed under an act of the legislature to superintend the construction of the statehouse were not officers within the meaning of the constitution, but were agents or employees for a single and special purpose, whose functions ceased

upon the completion of the work. The question was subsequently regarded in that state of sufficient importance to call for a constitutional definition, and hence in 1870 the constitution ordained the following: "An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power or for a fixed term, with a successor elected or appointed. An employment is an agency for a temporary purpose, which ceases when that purpose is accomplished." (Ill. Const. 1870, art. 5, sec. 24.)

Somewhat in line with the Illinois case last above cited is the case of *McDaniel v. Yuba County,* 14 Cal. 444, where it was held that the examining physician of the county hospital was not an officer but an employee, to be paid under the terms of his contract, though his services were rendered in a capacity in the nature of a public office or appointment. And so it was held recently in *White v. Alameda,* 124 Cal. 95, that the position of driver of a street wagon, with a salary fixed by the board of trustees, was not an office, but a mere employment held at the pleasure of the board.

In the case of *Quigg v. Evans,* 121 Cal. 546, the question was whether the harbor master of the port of Eureka was an officer within the meaning of section 8, article V, of the constitution, which reads: "When an office from any cause becomes vacant, and no mode is provided by law for filling such vacancy," the governor may appoint, etc. The act creating the position reads: "The town marshal of Eureka is the harbor master of the port of Eureka," etc. By the act he was to enforce the rules and regulations of the harbor commissioners, and his compensation was to be fixed by them. It was held that the office of harbor master was created, and that when, by the adoption of a new charter, the city of Eureka no longer had a town marshal, there existed a vacancy in the office which the governor could fill.

Illustrations might be multiplied, but it would only emphasize what must already be apparent, that the definitions of the term "office," while not inaccurate, taken in a general sense, are quite inadequate when applied to particular cases. An examination of adjudicated cases will show that the disagreement among judges has not been so much as to definitions as in their application to the circumstances of each particular case.

Turning to the statute we find that it is made the duty of the board of health to appoint a large number of persons to various positions therein named, of greater or less importance (Pol. Code, sec. 3009); among which are six health inspectors. In every case "the duties must be fixed by the board of health," except in the single instance of the two police surgeons, who, in addition to the duties to be prescribed by the board, "shall make all autopsies required of them by the coroner." Certain "medical attendants" and "employees" are to be paid such compensation as the board shall fix, but most of the appointees named are to be paid salaries fixed by section 3010 of the Political Code, while others are to be paid such sums as may be authorized by law: "Health inspectors, twelve hundred dollars each." It seems to be reasonably well settled that where the legislature creates the position, prescribes the duties, and fixes the compensation, and these duties pertain to the public and are continuing and permanent, not occasional or temporary, such position or employment is an office and he who occupies it is an officer. In such a case, there is an unmistakable declaration by the legislature that some portion, great or small, of the sovereign functions of government are to be exercised for the benefit of the public, and the legislature has decided for itself that the employment is of sufficient dignity and importance to be deemed to be an office.

It is only where the legislature has delegated its power to create the office and to prescribe the duties and compensation, that differences of opinion have arisen in the courts. Without attempting a reconciliation of these differences, it appears that the legislature in the present case has created the office and has fixed the salary attaching to it; the employment is a continuing one and not transient, occasional, or incidental, and its incumbent would remain in office should the officers of the board of health cease to act as such, and the office of health inspectors would continue if the incumbents were removed or for any cause ceased to act. The health inspector is invested with some portion of the sovereign functions of government, to be exercised for the benefit of the public; his duties are not prescribed by contract, but are defined by the government through the board of health, and we find in the employment all the ele-

ments mentioned in the Hartwell case, *supra,* viz., tenure, duration, emoluments, duties, and a compensation fixed by law. The element of duties to be performed involved in the creation of an office under all definitions and under most of the decisions was not directly determined by the legislature; to the board was delegated the power to prescribe the duties. But many cases hold, we think properly, that an employment may be none the less an office, although the duties are to be prescribed by a superior officer.

"The board of health have general supervision of all matters appertaining to the sanitary condition of the city and county," etc. (Pol. Code, sec. 3012); their powers and duties are large and important, and the statute authorizes the board to devolve upon the health inspectors such portion of these powers and duties as the board may deem best for the good of the public service. So far as the evidence shows, the duties thus delegated to the inspectors are not extensive, but they cannot be said to be unimportant or purely ministerial, or lacking in the requirements of judgment and discretion; and the board may at any time enlarge them. It is difficult to take this case out of the rules which governed the case of *Quigg v. Eureka, supra,* or the case of *United States v. Hartwell, supra,* or *United States v. Maurice, supra,* or the principles laid down in the opinion of the judges reported in 3 Maine, *supra,* or to distinguish it from *Vaughn v. English, supra.*

In the case of *Kennedy v. Board of Education, supra,* it was conceded by both parties and assumed by the court in the majority opinion that the position of teacher in the public schools of the city and county of San Francisco is not an office, and hence that case cannot aid us in reaching a decision here.

Our conclusion is that the intention of the legislature was to make the health inspectors officers within the meaning of the constitution, and, having failed to declare the term of the office, they hold during the pleasure of the board of health. (*People v. Perry, supra; People v. Hill,* 7 Cal. 97; *Smith v. Brown,* 59 Cal. 672.)

It is advised that the judgment be reversed, with directions to dismiss the writ.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to dismiss the writ.

Harrison, J., Garoutte, J., McFarland, J., Henshaw, J.

Rehearing denied.