[S.F. No. 23290. In Bank. Aug. 21, 1975.]

EDMUND G. BROWN, JR., as Governor, etc.,
et al., Petitioners, v.
THE SUPERIOR COURT OF MENDOCINO
COUNTY, Respondent;
JOHN MAYFIELD, JR., Real Party in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Richard D. Martland, Deputy Attorney General, for Petitioners.

No appearance for Respondent.

Rawles, Hinkle, Finnegan, Brigham, Carter & Petersen and Jared G. Carter for Real Party in Interest.

## Opinion

**TOBRINER, J.**—The question before us is whether the Governor may at his pleasure terminate the appointment of real party in interest, John Mayfield, as a public representative to the North Coast Regional Commission. ■ The California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, § 27000 et seq.) does not establish a fixed term of service for members of regional coastal commissions either expressly or by implication. Government Code section 1301 provides that whenever the term of office is not fixed by law, that office is held at the pleasure of the appointing authority. As we set forth in more detail in this opinion we have therefore concluded that the Governor may terminate Mayfield's appointment.

Governor Reagan appointed Mayfield to the North Coast Regional Commission on December 31, 1972. On May 18, 1975, Governor Brown notified Mayfield that the Governor was terminating that appointment and naming a successor. Mayfield challenged that action by suit for declaratory relief and mandate, and on May 21 secured a judgment of the superior court ordering the Governor to revoke the order removing Mayfield. Observing that the work of the North Coast Regional Commission would be hampered if the status of Mayfield or his successor were uncertain, and advised that similar disputes had arisen respecting membership in other regional commissions,[1] we assumed jurisdiction to resolve this controversy.

The California Coastal Zone Conservation Act of 1972 is an initiative measure enacted by the voters in November of 1972. The act establishes a state commission (Pub. Resources Code, § 27200) charged with the duty of preparing a plan for land use and development within the coastal zone. (Pub. Resources Code, §§ 27300, 27304.) The act also creates six regional commissions (Pub. Resources Code, § 27201), which submit recommendations to the state commission concerning land use and development within each region (Pub. Resources Code, § 27320, subd. (b)) and which issue permits to control development within each region pending the enactment of a statewide plan (Pub. Resources Code, §§ 27400-27403). The act, as well as the commissions it establishes, expires on January 1, 1977. (Pub. Resources Code, § 27650.)

---

[1] Petitions have been filed with this court in *Phillips* v. *Brown* (S.F. 23294) and *Bright* v. *Brown* (S.F. 23298), which concern the removal of public representatives from the South Coast Regional Commission, and *Conde* v. *Board of Supervisors* (L.A. 30482), which involves the removal of a local government representative from the San Diego Coast Regional Commission.

The North Coast Regional Commission includes the counties of Del Norte, Humboldt and Mendocino. Its membership consists of six representatives of local government—one supervisor and one city councilman from each county—and six public representatives. Public representatives are appointed "equally by the Governor, the Senate Rules Committee and the Speaker of the Assembly" (Pub. Resources Code, § 27202); appointees of the Governor are subject to confirmation by the Senate. (Pub. Resources Code, § 27221.)

The act requires that members of regional commissions must be appointed no later than December 31, 1972, but specifies no term of office. Public Resources Code section 27222 declares that a person who qualifies for membership on a regional commission because he holds some local office, such as a supervisor or councilman, ceases to be a member of the commission when his local term of office expires. Apart from this provision, the act does not provide for the removal of members of regional commissions.

The California Constitution of 1849, in article XI, section 7, mandated that "When the duration of any office is not provided for by this Constitution, it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment." The Constitution of 1879 reenacted this declaration as article XX, section 16. Although article XX, section 16, was repealed in 1972, the rule it established remains viable by codification in Government Code section 1301, which provides that "Every office, the term of which is not fixed by law, is held at the pleasure of the appointing power."

Relying upon the rule enunciated in these constitutional and statutory declarations, California courts have frequently held that appointed officials without fixed terms of office can be removed by the authority which appointed them. (See Scully v. State of California (1942) 20 Cal.2d 178, 180 [124 P.2d 609]; Brennan v. Riley (1935) 3 Cal.2d 736, 740 [46 P.2d 972]; Sponogle v. Curnow (1902) 136 Cal. 580, 585 [69 P. 255]; Patton v. Board of Health (1899) 127 Cal. 388, 399 [59 P. 702]; Kenyon v. Western Union Tel. Co. (1893) 100 Cal. 454, 457 [35 P. 75]; Oxley v. County of Orange (1964) 228 Cal.App.2d 620, 621 [39 Cal.Rptr. 697].)

Thus if no fixed term of office is provided by law, Government Code section 1301 would compel the conclusion that a representative appointed by the Governor could be removed by the Governor. Consequently

we must inquire whether the California Coastal Zone Conservation Act of 1972 establishes a fixed term of office for public representatives on the North Coast Regional Commission.

As we noted previously, no express provision of the act establishes a fixed term of office for any member of a regional commission. In *Boyd* v. *Huntington* (1932) 215 Cal. 473, 479 [11 P.2d 383], however, we declared that "a term of office may be fixed by law, although not so stated in express terms by the statute, where such a result is properly inferred from the construction of the statute as a whole." We direct our inquiry, therefore, to the question whether the language and objectives of the initiative act *impliedly* establish a fixed term of office for members of regional commissions.

Mayfield points out that a commissioner's term of office necessarily terminates on January 1, 1977, when the act by its terms stands repealed (Pub. Resources Code, § 27650) and all commissions created under its authority expire; he argues that the act thus impliedly grants commissioners a fixed term lasting until January 1, 1977. We perceive, however, no necessary relationship between the tenure of office of individual commissioners and the duration of the commission itself.

The California Coastal Zone Conservation Act expires on January 1, 1977, because the commissions it creates should have completed their task of preparing a coastal zone plan before that date. (See Pub. Resources Code, § 27320.) Nothing in that limited duration, however, suggests that the drafters or voters intended to confer upon a public representative a term of office equal to the duration of the commission, and thus deny state administrations elected after January of 1973 any role in the selection of those representatives. The drafters and voters could reasonably choose to establish a commission of limited duration, but one composed of politically responsive members subject to removal by elected officials.

The Mendocino County Superior Court based its conclusion that the voters intended public members of regional commissions to serve a fixed term upon the act's provision for removal of local government representatives and upon the statutory objective of creating a state coastal plan. Noting that Public Resources Code section 27222 provides for the automatic removal of local government representatives when their local terms of office expire, but does not mention removal of public representatives, the court inferred that public representatives cannot be

removed. The court further reasoned that continuity of membership on regional commissions was essential for the commission to perform its task of formulating recommendations on planning for the North Coast Region.[2]

These inferences are not logically compelling. The fact that the act provided for automatic removal of commissioners who no longer fulfil the statutory requisites for membership has little bearing on the question whether qualified commissioners are immune from removal by the person or body who appointed them. And the fact that the act does provide for automatic removal of local government representatives when their local term of office expires demonstrates that the voters did not believe total continuity of membership was essential to effective regional planning.

Mayfield finally argues that the letter appointing him to the North Coast Regional Commission stated that his term "will expire as prescribed by law;" in contrast, when he earlier served as Deputy Director of the Department of Conservation his letter of appointment said his term was "at the pleasure" of the appointing authority. ▮ The language of the letter of appointment, however, is irrelevant; the appointing authority cannot confer a right to a fixed term of office when the underlying statute creates no such term. (*Scully* v. *State of California, supra,* 20 Cal.2d 178, 180.)

▮ In summary, we find nothing in the language or purpose of the California Coastal Zone Conservation Act of 1972 from which to infer that the voters intended to grant members of regional commissions a fixed term of office. Under these circumstances the language of Government Code section 1301 is controlling; Mayfield holds office "at the pleasure of the appointing power" and can be removed from office at the pleasure of the appointing power.

---

[2]Public Resources Code section 27220 provides that "Each public member of the commission or of a regional commission shall be a person who, as a result of his training, experience, and attainments, is exceptionally well qualified to analyze and interpret environmental trends and information, to appraise resource uses in light of the policies set forth in this division, to be responsive to the scientific, social, esthetic, recreational, and cultural needs of the state. Expertise in conservation, recreation, ecological and physical sciences, planning, and education shall be represented on the commission and regional commissions."

As Mayfield contends, this provision demonstrates the voters' desire for expert and experienced persons to serve on the regional commissions. That concern, however, appears directed to securing the service of persons with previous experience and expertise, not to the tenure of office of present members.

Let a peremptory writ of mandate issue directing the respondent Superior Court of Mendocino County to vacate its judgment of May 21, 1975, in action No. 36038, and to enter judgment in favor of defendants. This order is final forthwith.

Wright, C. J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—I dissent.

As the majority concedes, a fixed term of office may be inferred from the statute creating the appointment. (*Boyd* v. *Huntington* (1932) 215 Cal. 473, 479 [11 P.2d 383].) The history, purpose, and language of the Coastal Zone Conservation Act of 1972 clearly show that the public commissioners serve for the brief term of the act rather than for the shorter-termed pleasure of the sovereign.

The people could have chosen "to establish a commission . . . composed of politically responsive members subject to removal by elected officials." (*Ante,* at p. 56.) But the citizenry was understandably reluctant to entrust this planning project to their elected representatives, inasmuch as similar legislation repeatedly had failed to make safe passage through the legislative rapids. (Ballot Pamphlet, Gen. Election (Nov. 7, 1972) p. 53.) Consequently, the act provided that fully half the commission's members come from outside government, that three agencies equally appoint them, and that the Senate confirm the Governor's nominees. Although those serving must be "exceptionally well qualified to analyze and interpret environmental trends and information, to appraise resource uses in light of the policies [of the act], [and] to be responsive to the scientific, social, esthetic, recreational, and cultural needs of the state" (Pub. Resources Code, § 27220), long-term decisions were deferred until the commission could hear from individual citizens at special public meetings. As Judge Wetter put it, the people desired that the commission "make an entirely independent, wholly independent investigation and report of a specific scheme to the Legislature. . . ."

Manifestly neither the proponents of the initiative nor the people adopting it wanted the Governor, the Senate Rules Committee, or the Speaker of the Assembly to control the commission's important work.[1] The commission's public members were intended to be both highly

---

[1] The Governor with the approval of the Senate, the Speaker, and the committee each appoint roughly one-third of the 45 public members.

qualified and independent of the political cross-currents of Sacramento, serving continuously throughout the short life of the commission.[2]

In *Humphrey's Executor* v. *United States* (1935) 295 U.S. 602 [79 L.Ed. 1611, 55 S.Ct. 869], the Supreme Court was confronted with the question whether the President had the authority to remove members of the Federal Trade Commission at his whim. The court rejected the contention, enunciating the principles which are controlling here: "The Commission is to be non-partisan; and it must, from the very nature of its duties, act with entire impartiality. It is charged with the enforcement of no policy except the policy of the law. Its duties are neither political nor executive, but predominantly quasi-judicial and quasi-legislative. . . . [T]he language of the act, the legislative reports, and the general purposes of the legislation . . . all combine to demonstrate the congressional intent to create a body of experts who shall gain experience by length of service—a body which shall be independent of executive authority, *except in its selection,* and free to exercise its judgment without the leave or hindrance of any other official or any department of the government." (*Id.,* at pp. 624, 625-626, [79 L.Ed. at pp. 1617, 1618], original italics.)

Were our new commissioners only to implement an established policy, the majority holding would be unfortunate enough, since it necessarily imports that all 45 public members serve merely at the pleasure of those appointing them. But since the commissioners themselves must *formulate* future policy, the possibility of their wholesale replacement without notice or cause becomes even more disturbing. By transforming the apolitical into the political, this court creates an ominous potential for mischief.

McComb, J., concurred.

---

[2]The limited duration, single purpose nature of the act differentiates this case from those involving the typical governmental agency and employee. As Judge Wetter accurately observed: "In the enactment . . . I see a single short sort of deal; in other words, here is a specific thing to be done, and let's be at it. . . . This was a single-shot thing." The commission's coastal zone plan must be adopted and submitted to the Legislature by *1 December 1975.* (Pub. Resources Code, § 27320, subd. (c).)