OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 18-203 |
| | : | |
| of | : | April 11, 2019 |
| | : | |
| XAVIER BECERRA | : | |
| Attorney General | : | |
| | : | |
| MANUEL M. MEDEIROS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

Proposed Relator JAMES FENKNER has requested leave to sue proposed defendant CATHY MURILLO, the Mayor of Santa Barbara, in quo warranto, to remove her as the representative for the City of Santa Barbara on the governing board of the Santa Barbara County Association of Governments (SBCAG), and to reinstall Councilmember Jason Dominguez into that position, on the ground that the city council's removal of Dominguez and appointment of Murillo were actions taken in violation of the council's rules of order.

CONCLUSION

Proposed relator has failed to raise a substantial legal or factual question as to whether (1) the Santa Barbara City Council violated its own rules of order in removing Councilmember Dominguez and appointing Mayor Murillo as the city's representative on the SBCAG governing board, or (2) any such procedural violation would invalidate the actions taken. Nor would the public interest be served by allowing a quo warranto action to proceed under these circumstances. Accordingly, the application is DENIED.

1

ANALYSIS

The Santa Barbara County Association of Governments (SBCAG) is a regional planning agency consisting of Santa Barbara County and all eight incorporated cities within the county.[1] "SBCAG distributes local, state, and federal transportation funds and acts as a forum for addressing regional and multi-jurisdictional issues."[2]

SBCAG was established in 1966 under a joint powers agreement executed by Santa Barbara County and each of the city governments in the county (hereafter, Joint Powers Agreement).[3] SBCAG's governing body comprises "the five members of the Santa Barbara County Board of Supervisors and one additional member from each incorporated city within the boundaries of the County of Santa Barbara which is a party to [the] agreement."[4] The City of Santa Barbara (City) is a constituent member of SBCAG.

The Santa Barbara City Council (City Council) comprises seven members.[5] According to the city's official website: "Each of the six Councilmembers serves a specific district within the City. The Mayor is the only at-large member of the City Council who represents the entire City."[6]

On January 9, 2018, the City Council appointed Councilmember Jason Dominguez on a 3-2 vote to represent the City at SBCAG.[7] Councilmembers Dominguez, Rowse, and

---

[1] See SBCAG official website (hereafter, SBCAG website), Bylaws, art. III, § A.1, http://www.sbcag.org/uploads/2/4/5/4/24540302/sbcag_bylaws.pdf; see also SBCAG website, "Policy Board," http://www.sbcag.org/policy-board.html.

[2] SBCAG website, *supra,* "Overview," http://www.sbcag.org/overview.html.

[3] A copy of the Joint Powers Agreement was included in Mayor Murillo's response to Proposed Relator's application. (See Cal. Code Regs., tit. 11, § 3 [response to quo warranto application].)

[4] Joint Powers Agreement, ¶ 1.

[5] City of Santa Barbara official website, https://www.santabarbaraca.gov/gov/cityhall/council/default.asp>.

[6] *Ibid*. According to the City's website, in 2015, the City changed from at-large elections to district elections for all City Council seats other than the mayor's. (*Ibid.,* "District Elections," https://www.santabarbaraca.gov/gov/vote/archive/2015_election/district_elections.asp.) The current City Charter reflects the change. (See Santa Barbara City Charter, ¶ 500, available at https://www.santabarbaraca.gov/civicax/filebank/blobdload.aspx?BlobID=11878 [hereafter, City Charter].)

[7] Minutes, City Council meeting (Jan. 9, 2018), Item 24, p. 9, available at http://santa

2

Sneddon voted for Dominguez; Councilmember Friedman and Mayor Murillo voted for Murillo; and Councilmember Hart recused himself due to his employment with SBCAG.[8] We are informed that, at the time of the appointment, one of the district-specific seats on the City Council was vacant.

Dominguez was later removed as SBCAG representative at a regular meeting of the City Council held on February 6, 2018.[9] Following presentation of a report from the City Administrator, and testimony by five members of the public, the City Council considered a motion made by Councilmember Friedman and seconded by Mayor Murillo to remove Dominguez and replace him with Murillo.[10] The motion passed 3-2. Councilmembers Dominguez and Sneddon voted "No"; Councilmember Hart again recused himself. Councilmember Rowse, who had previously voted to appoint Dominguez, joined with Friedman and Murillo to remove him and to appoint Mayor Murillo instead.[11]

Proposed Relator[12] alleges that the City Council's renewed consideration of its SBCAG representation at the February 6 meeting, and its subsequent motion to remove Dominguez as representative, amounted to an untimely "Motion for Reconsideration" in violation of Rosenberg's Rules of Order, the parliamentary rules that have been adopted

---

barbara.granicus.com/DocumentViewer.php?file=santabarbara_71ceb139ec1e2d2bdbbe8 89c15fe2361.pdf&view=1.

[8] *Ibid.*

[9] Minutes, City Council meeting (Feb. 6, 2018), Item 14, p. 10, available at http://santabarbara.granicus.com/DocumentViewer.php?file=santabarbara_f72ac8f556d3f 596817fa5b05bcbdfe8.pdf&view=1.

[10] The online minutes of the February 6 meeting reflect presentation of a City Administrator's report, but the posted minutes do not include the report itself, and we did not receive a copy from either party. According to the City's video recording of the meeting, Councilmember Friedman made his motion because he perceived a need to have the SBCAG representative directly accountable to all city voters, and the implications of the City's movement from at-large elections to district elections (see note 6, *ante*) had not been discussed at the January 9 meeting. The matter of Dominguez's removal was debated by councilmembers. The five members of the public (Proposed Relator was not among them) spoke against revisiting the January 9 appointment. (See Video, City Council meeting (Feb. 6, 2018), http://santabarbara.granicus.com/MediaPlayer.php?view_id=267 &clip_id=9227 [hereafter, Video].)

[11] Minutes, City Council meeting (Feb. 6, 2018), *supra,* p. 10, Item 14.

[12] Proposed Relator alleges that he is a registered voter in the City of Santa Barbara.

3

18-203

by the City Council.[13]  He seeks leave to sue in quo warranto to remove Mayor Murillo from the position of City Council representative on SBCAG and to reinstall Councilmember Dominguez.  For the reasons discussed below, we deny the request.

"Quo warranto," literally meaning "by what authority," was a writ at common law, by which the crown instituted a formal inquiry into whether a subject had the right to hold public office.[14]  The remedy is currently codified in section 803 of the Code of Civil Procedure, which provides in relevant part:

> An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . .  And the attorney-general must bring the action, whenever he has reason to believe that any such office . . . has been usurped, intruded into, or unlawfully held . . . .[15]

A private party seeking to bring such an action must obtain the consent of the Attorney General.[16]  In deciding whether to grant leave to sue we do not resolve the merits of the dispute, but only "decide whether the application presents substantial issues of fact or law that warrant judicial resolution, and whether granting the application will serve the public interest."[17]  Allegations must be based on direct evidence, not on information and belief.[18]  Speculation without evidence is insufficient, especially when contradicted by facts.[19]

---

[13] See Rule 4.6, Santa Barbara City Council Procedures, available at https://www.santabarbaraca.gov/civicax/filebank/blobdload.aspx?BlobID=165674 (Rules of Procedure); Rosenberg's Rules of Order (Rosenberg's Rules), p. 6, "The Motion to Reconsider," available at https://www.cacities.org/Resources/OpenGovernment/RosenbergText_2011.aspx.  Rosenberg's Rules are simplified rules of parliamentary procedure written by Yolo County Superior Court Judge Dave Rosenberg.

[14] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875.

[15] Code Civ. Proc., § 803.

[16] 96 Ops.Cal.Atty.Gen. 48, 49 (2013).

[17] 95 Ops.Cal.Atty.Gen. 50, 51 (2012).

[18] 27 Ops.Cal.Atty.Gen. 249, 253 (1956).

[19] See 101 Ops.Cal.Atty.Gen. 42, 45 (2018); see also, 75 Ops.Cal.Atty.Gen. 287, 289 (1992) (allegations would not overcome corroborated direct evidence of intent); 74 Ops.Cal.Atty.Gen. 26, 27 (1990) (uncorroborated allegation of intent insufficient).

4

At the outset, we clarify what is *not* at issue here. Proposed Relator does not, and reasonably cannot, contend that Councilmember Dominguez acquired a vested right in the appointment on January 9.[20] The position of SBCAG representative is an "at will" appointment of the City Council. The SBCAG Joint Powers agreement expressly states that "[t]he representative from each city . . . shall serve as long as he or she shall hold office [as mayor or city councilmember] or until resignation or removal by majority vote of the City Council represented."[21] The Government Code specifies that "[e]very office, the term of which is not fixed by law, is held at the pleasure of the appointing power."[22] Councilmember Dominguez, therefore, could be removed from the position at any time, for any reason.[23] Moreover, in the absence of a statutory or charter provision to the contrary, the "pleasure" of the City Council is expressed by majority vote.[24] In any event,

---

[20] Unlike the circumstances here, where an appointment is for a term, or where removal requires a hearing, there may be a question whether an appointive body still has the power or jurisdiction to reconsider an appointment once it has been made. (See, e.g., *MacAlister v. Baker* (1934) 139 Cal.App. 183.)

[21] Joint Powers Agreement, ¶ 1.

[22] Gov. Code, § 1301. We assume that the position of the City's SBCAG representative is a "public office" within the meaning of Code of Civil Procedure section 803, governing quo warranto. But, in light of our analysis, we need not decide the issue. (See 78 Ops.Cal.Atty.Gen. 60, 62 (1995) [declining to decide whether city's representative to joint powers entity was a public office, because concurrent holding of both positions would not be incompatible in any event].)

[23] *Brown v. Superior Court* (1975) 15 Cal.3d 52, 54 ("Government Code section 1301 provides that whenever the term of office is not fixed by law, that office is held at the pleasure of the appointing authority"); *Fee v. Fitts* (1930) 108 Cal.App. 551, 556 ("It is a well-settled rule of law that where there are no restrictive provisions the power of appointment carries with it the power of removal"); 67 Ops.Cal.Atty.Gen. 405, 406 (1984) (mayor and mayor pro tem of general law city could be removed at any time by city council); compare with 94 Ops.Cal.Atty.Gen. 1 (2011) (where statute provided for term of office, city council could not remove its appointee to district board at the council's pleasure); see also *Kimura v. Roberts* (1979) 89 Cal.App.3d 871, 874 ("a planning commissioner serving at the pleasure of the [city council] may be terminated for any reason, without cause, notice, or a hearing so long as reason for removal is not an unconstitutional one").

[24] *California Building Industry Association v. State Water Resources Control Board* (2018) 4 Cal.5th 1032, 1039 ("The 'almost universally accepted common-law rule is [that] . . . in the absence of a contrary statutory provision, a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body'"); see also Civ.

Councilmember Dominguez is not himself before us claiming any right to the position.

Nor is Proposed Relator contending that the City Council lacks fundamental power or jurisdiction to remove Councilmember Dominguez. The City Charter provides: "*All powers of the City shall be vested in the City Council except as otherwise provided in this Charter*."[25] Proposed Relator cites nothing in the City Charter that restricts the City Council's power to remove its designated appointee to SBCAG, and to then fill the vacancy created by that removal.

Instead, Proposed Relator alleges that the February 6 motion to remove Dominguez as representative was *procedurally* out of order as an untimely "Motion for Reconsideration." Proposed Relator implicitly concedes that the motion at issue was not on its face referred to or denominated as a Motion for Reconsideration.[26] Rather, Proposed Relator argues that, however it was denominated, the motion should be construed to be a Motion for Reconsideration (that was therefore untimely per the council's rules of procedure). According to Proposed Relator, "There is no other reasonable interpretation of this action other than to determine it is a Motion for Reconsideration of the appointment of Mr. Dominguez to the board of SBCAG."[27]

---

Code, § 12 ("Words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it is otherwise expressed in the Act giving the authority"); 66 Ops.Cal.Atty.Gen. 336, 336 (1983) ("The general parliamentary rule governing actions taken by a legislative body is that the body is empowered to act by a majority vote of those actually voting, where a majority of the existing membership is present").

[25] City Charter, *supra*, ¶ 505, emphasis added.

[26] The uncontroverted evidence is that no item *denominated* "Motion for Reconsideration" of Dominguez's appointment was either presented to the City Council or voted on by the City Council at its February 6 meeting. As evidenced from the publicly available minutes, the agenda item voted on at the February 6 meeting was denominated: "Motion: Councilmembers Friedman/Murillo to remove Councilmember Dominguez from SBCAG and to replace him with Murillo." (Minutes, City Council meeting (Feb. 6, 2018), *supra,* Item 14.)

[27] Verified Statement of Facts, ¶ 11.

6

18-203

But "[i]t is axiomatic that argument is not evidence."[28] Not only was the motion not denominated, as a "Motion for Reconsideration," but Proposed Relator has submitted no evidence that any member of the City Council believed the motion at issue to be a motion for reconsideration under Rosenberg's Rules.[29] Moreover, no member of the City Council appealed from the Mayor's decision to move the motion forward on the ground that it was procedurally untimely.[30] Accordingly, the evidence fails to demonstrate that the motion to remove Dominguez and appoint Murillo at the February 6 meeting was a Motion for Reconsideration within the meaning of Rosenberg's Rules.

---

[28] *People v. Breaux* (1991) 1 Cal.4th 281, 313; see *Winnaman v. Cambria Community Services Dist.* (1989) 208 Cal.App.3d 49, 54 ("'It is inconceivable that a commercial trailer court . . . would not use excessive water reserves in contrast with a commercial warehouse.' Such a statement is argument, it is not evidence").

[29] In general, a motion for reconsideration suspends any action on the initial motion, which is why it must be made at the meeting in which the original motion was made. (See Rosenberg's Rules, *supra*, p. 6, "Motion to Reconsider"; see also Roberts Rules of Order Revised (4th ed), ¶ 36, "Reconsider," available at Robert's Rules Online, http://www.rulesonline.com/.) However, it is evident the City Council regarded Dominguez's appointment as having been *completed* at the January 9 meeting; accordingly, Councilmember Dominguez attended the January 18 SBCAG meeting as the City's representative. (See Approved SBCAG Minutes (Jan. 18, 2018), http://meetings.sbcag.org/Meetings/SBCAG/2018/Jan%2018/Approved%20Jan%2018%20mins.pdf.)

[30] Rosenberg's Rules, *supra*, p. 7, "Appeal." We note from viewing the video recording of the February 6 meeting that Councilmember Dominguez "objected" to the motion as "out of order" on the ground that it was a "reconsideration" of the appointment taken up less than 90 days after the January 9 meeting, in asserted violation of "Resolution 05-073." We have not been provided with a copy of this resolution, but it appears to have limited the council's jurisdiction to again take up a matter once it has been acted upon; it plainly was not a procedural objection under Rosenberg's Rules. The city attorney opined that the objection was not well-taken; no other member treated the objection as an appeal by "seconding" the objection; no vote was taken on the objection; and the objection is not recorded in the minutes. Moreover, Proposed Relator does not rely on Resolution 05-073. To the contrary, Proposed Relator informs us that Resolution 05-073 was a *predecessor* to the City Council's Rules of Procedure that was *rescinded* in 2009 by Santa Barbara City Council Resolution 09-097, which was, in turn, rescinded in 2015 by Santa Barbara City Council Resolution 15-091, which adopted the Rules of Procedure and Rosenberg's Rules. (Proposed Relator's Verified Statement of Facts, ¶ 8.)

7

Finally, even if the City Council did violate its own procedural rules, the violation would not invalidate either Dominguez's removal or Murillo's appointment. Nor, indeed, would it give rise to an interest that Proposed Relator may legally enforce. Parliamentary rules are "adopted for the guidance, and it may be protection, of the members of the board, and which they [have] power to suspend or ignore when occasion require[s], and, in respect to their action in so doing, no one but the members of the board themselves have a right to complain."[31] Indeed, this rule is embodied in the City Council's Rules of Procedure:

> These Procedures are directory not mandatory. No action of the City Council shall be held invalid due to any failure to observe the provisions of these procedures, nor shall any person have a claim or cause of action against the City or any of its officers or employees as a result of any such failure.[32]

The City's Municipal Code is in accord: "The rules of procedure adopted pursuant to this chapter are deemed to be procedural only, and the failure to strictly observe such rules shall not affect the jurisdiction of the City Council or invalidate any action taken at a meeting that is otherwise held in conformity with law."[33]

We conclude, then, that Proposed Relator has presented no substantial question of law or fact requiring judicial resolution. We therefore see no public interest to be served by the expenditure of scarce judicial resources in the pursuit of a quo warranto action.[34] The application to proceed in quo warranto is DENIED.

*****

---

[31] *Grosjean v. Board of Ed. of City and County of San Francisco* (1919) 40 Cal.App. 434, 437; see also *City of Pasadena v. Paine* (1954) 126 Cal.App.2d 93, 96 (failure to observe parliamentary rule "is not jurisdictional and does not invalidate action which is otherwise in conformity with charter requirements"); Rosenberg's Rules, *supra*, p. 2 ("The ultimate purpose of rules of procedure is to encourage discussion and to facilitate decision making by the body. In a democracy, majority rules. The rules must enable the majority to express itself and fashion a result, while permitting the minority to also express itself, but not dominate, while fully participating in the process").

[32] Rules of Procedure, *supra*, ¶ 1.2.

[33] Santa Barbara Municipal Code, § 2.04.020, ¶ B.

[34] 99 Ops.Cal.Atty.Gen. 74, 81 (2016).

18-203